## HARRIET B. BARNES et al. v. JACOB IMHOFF, Appellant.

### Division One, January 3, 1914.

1. **LOST INSTRUMENTS: Court Files: Proof.** The fact that the statutes (R. S. 1909, secs. 10422 and 10423) provide a method of supplying instruments lost from court files, does not prevent the proving of the contents of such lost instruments by parol evidence in the ordinary way.

2. **LOST EXECUTION: Proof by Parol: Levy.** When an execution has been destroyed parol evidence is competent to prove its contents and the indorsements thereon, including the levy.

3. **EXECUTION: Levy: Lien: Return.** Where a sheriff has levied upon real estate under an execution before the beginning of the return term, the lien of the execution remains in force until sale made during the term, despite any effort of the sheriff to return the execution after levy and before sale. [R. S. 1909, sec. 2228.]

4. ———: ———: ———: ———: **First Day of Term.** The law does not require an execution to be returned on the first day of the term, and a levy upon real estate made after the term has begun and a sale during the term is effective to pass the title.

5. ————: **"Unsatisfied."** The word "unsatisfied" when applied, without more, to an execution does not mean that there has been a return. It simply conveys the idea that the writ has not been paid.

6. **TRUSTS: Evidence: Buying at Execution Sale.** Evidence *held* not to support defendant's allegation that the attorney who bought his land at an execution sale during defendant's absence from the State took as his trustee.

Appeal from Madison Circuit Court.—*Hon. Peter H. Huck,* Judge.

AFFIRMED.

*Wilson Cramer* for appellant.

(1)  On the 26th day of September the circuit court called its execution docket, a certified copy of page 15 of which, showing the issuing of an execution in the case of Depoyster v. Imhoff, was introduced by defendant, and the following notation was made by the judge with reference to this execution: "26 Sept., 1900, unsatisfied." This was made, of course, upon information given by the sheriff. By the statute, the court shall call over the execution docket, "in order to see that proper returns have been made and entered," and "the return, if any," shall be entered on the execution docket. The statute uses the past tense "have been made and entered." The officer, whose duty it was to make return, when called upon by the court in order to see that proper return had been made and entered, does not report that he had levied upon land and that the sale was suspended, but informs the court that the execution remained unsatisfied. (2) The execution was thereafter *functus officio* and the sheriff had no authority to do any further act thereunder. (3) It is not competent to prove the contents of a lost execution by parol. When returned, the execution becomes a part of the judgment roll. While, ordinarily, the contents of a lost document may be shown by

parol, the rule has been changed by statute as to some classes of documents, among them executions, and such evidence is not competent to prove their contents. They must be supplied by legal proceedings, as provided by Secs. 4560 and 4561, R. S. 1899. The statute is without purpose, unless it is held to require more solemnity and care in the proof of the contents of the records and papers of which it speaks, and to deny the right to prove them by parol as in the case of other documents. Becker v. Denser, 169 Mo. 165; Campbell v. Greer, 197 Mo. 465; State v. Wilson, 200 Mo. 23; George v. Middough, 62 Mo. 591. (4) Having received Imhoff's letter, Conran, the attorney, while perhaps not bound to act affirmatively for him, could not legally do anything contrary to his interests without notice to him, and, when he purchased at the execution sale, took whatever title he obtained as trustee for Imhoff. Stacy, his partner in the transaction, stands in no better position. Aultman, Miller & Co. v. Loring, 76 Mo. App. 66; Bucher v. Hohl, 199 Mo. 324; Guinan v. Donnell, 201 Mo. 173. This is not a secret trust created by the act of parties, but one flowing by operation of law from the theoretically high position occupied by one who was licensed to practice the profession of law.

*Russell, Deal & Joslyn* for respondents.

(1) It is true that on the 26th day of September, 1900, Judge Riley made a notation on the execution docket, that the execution under which the land in controversy was afterwards sold was at that time unsatisfied. This was literally true, and had it not been for the mistake of the printer in getting one section of the land in the wrong range, it would have been satisfied at that time. The testimony of Mr. Conran, taken at the former trial, shows that the sheriff had levied upon the land before the first day of the September term, 1900, of the circuit court. He says: "I was shown

the publication, shown the execution and he had levied the same prior to the date of the sale, in proper time and upon the proper land, and the printer had made a mistake in the description of one part of it, as I remember, and the land was incumbered, and for that reason, that the misdescription had been made on a portion of it, the sale was not had in September. This is my recollection of it.'' (2) Parol evidence is admissible to prove the contents of a lost instrument. Davis v. Montgomery, 205 Mo. 271; Farry v. Walser, 57 Mo. 169; Foulk v. Colburn, 48 Mo. 225; Land & M. Co. v. Land & C. Co., 187 Mo. 420; Griffin v. Franklin, 224 Mo. 683.

BLAIR, C.—This is an action in ejectment for section 9 township 24, range 15, New Madrid county. The petition is in the usual form. On a previous appeal judgment for defendant, rendered by the circuit court of Bollinger county after sustaining a demurrer to plaintiffs' evidence, was reversed and the cause remanded. [238 Mo. 598.] Thereafter, by agreement, the case was sent to the circuit court of Madison county, and at the September, 1912, term of that court defendant filed an amended answer consisting of a general denial and a count wherein it is averred plaintiffs claim, by mesne conveyances, under James V. Conran and William L. Stacey, who purchased at a sheriff's sale under an execution issued on a judgment against defendant and in favor of one Depoyster, but which execution, so it is averred, had been returned previously, was no longer in force and effect and the sale was (therefore) null and void. In still another count in the answer it is averred that defendant owned sections 5 and 9, township 24, range 15, in New Madrid county, and had and was operating a sawmill thereon; that in 1900 he was called to Michigan by the illness of his wife, and, being detained there, wrote James V. Conran, an attorney

*Ejectment.*

at law living at New Madrid, requesting him to look after his, defendant's, interests; that during this absence of defendant the sheriff of New Madrid county undertook to sell the land mentioned and it was stricken off and sold to James V. Conran; that defendant had no knowledge of the pendency of any action against him by Depoyster until his return from Michigan; that he was fully able to pay the judgment rendered and had personalty on the land sufficient to satisfy that judgment; that if it be held the sale was valid, as against other objections, yet Conran, by reason of the facts stated, took title as trustee and could convey no better title than he had, and plaintiffs, claiming under Conran by mesne conveyances, took no better title than Conran acquired at the sale. The prayer of this count is that if the court shall determine that the sheriff's sale was valid then that it be decreed Conran and Stacey, to whom the sheriff's deed was executed, took title as trustees and that defendant's title forever be quieted and for general relief.

In the case of Butler v. Imhoff, 238 Mo. 584, the facts stated are those of this record in so far as they relate to the issues except those raised by the last count of the answer as above set out, except that the record now shows that on September 26, 1900, at the September, 1900, term of the New Madrid Circuit Court, Judge Riley wrote on the execution docket under the head "Remarks" and opposite the entry, "J. D. Deupester v. Jacob Imhoff," the words, "26 Sept. 1900. Unsatisfied."

The facts in the record pertinent to the issue raised by the last count in the answer are that James V. Conran died sometime after the first trial and before the trial which resulted in the judgment from which this appeal is taken. The answer upon which the case was first tried consisted solely of a denial of "each and every averment" of the petition "or any knowledge or information thereof sufficient to form a

belief'' and prayer for judgment. James V. Conran testified at the first trial but no question asked him related in the remotest way to any letter written him by defendant nor does it appear there was, at that trial, any intimation of any kind that such a letter had been written.

Defendant testified that he had known Mr. Conran thirteen or fourteen years and once during that time had employed him, but did not state the character of that employment; he testified that while in Michigan he wrote Mr. Conran in 1900, as averred in the answer, asking him ''to look after his interests, if anything came up'' and advise him of it, though he then knew nothing of the Depoyster suit, he said, but thought some one ''might try to steal his land.'' He says he mailed the letter, addressed to Mr. Conran at New Madrid, but received no reply; that upon his return to Missouri in March or April, 1901, he heard the land had been sold and went to see Mr. Conran; that he then went to see Judge Stacey. Defendant testifies Judge Stacey told him he bought the land at Mr. Conran's suggestion, Mr. Conran saying that he couldn't buy it and for him, Stacey, to buy and they ''would go partners in it.'' Defendant says he had three conversations with Stacey and two with Conran; to Stacey he says he offered to repay the amount of the bid and $500, but Stacey refused to accept the proposal. Defendant also testified that Rolwing and Moore, who bought from Conran and Stacey, before buying visited him at his ''office on section 9, New Madrid county,'' and asked him the facts regarding Conran and Stacey's purchase, and after he told them his story he says they declared they would not buy the land, saying to him ''they are trying to steal the land from you; we won't look it over, we will go home.''

As a matter of fact Rolwing and Moore bought the land from Conran and Stacey very soon after their

visit to section 9. Moore died sometime before the last trial of the case.

Judge Stacey testified he saw the notice of sale and told Mr. Conran he was thinking of buying the land; that Mr. Conran said he would like to buy in partnership with him and Mr. Conran did buy at the sale for the two; that he had but one conversation with defendant and the substance of that was he told defendant, who complained his land was sold while he was absent, to see Mr. Conran. He positively denied that defendant told him he had written Mr. Conran and denied that defendant offered to repay the bid and $500 and take the land, or made any offer at all. Mr. Rolwing testified that when he and Moore went to inspect the land with a view to buying it defendant pointed out the boundaries and seemed out of humor with Mr. Conran but said nothing about having written him but complained that his land had been sold under judgment, his sawmill had been sold under chattel mortgage and his wife had died and he was "in a bad shape every way;" "had been ruined." He testified defendant said further that he had never been satisfied there; that his wife would never stay there with him; that the land was "nothing but a swamp and he had cut all the timber off and if he just had it a little while longer to cut some timber he had purchased sometime before, he would be perfectly willing to give up and move and get out of that miserable swamp."

Rolwing also testified that some two or three years later defendant complained to him of Mr. Conran, saying something about having engaged Mr. Conran to look after his interests but he did not recall that even then defendant said anything about having written Mr. Conran or as to what arrangement he claimed to have with Mr. Conran. In his redirect examination Rolwing said he could not recall that defendant said anything at all about Mr. Conran on the occasion of the visit witness and Moore made to section 9.

At the time of the execution sale sections 5 and 9 were incumbered and Rolwing and Moore paid $1936 in discharge of this incumbrance. April 10, 1901, Conran and Stacey sold sections 5 and 9 to Huldah F. Peter for a recited consideration of $3100, subject to a mortgage for $2000; April 20, 1901, Huldah F. Peter conveyed the same land to Rolwing and Moore for a recited consideration of $5000; March 2, 1903, Rolwing and Moore conveyed section 9 to George C. Barnes for a recited consideration of $6400. Subsequently Barnes died, and this action was instituted by his heirs at law.

The testimony of Mr. Conran as given on the first trial was read in evidence, the court overruling defendant's objection to that part of it relating to the levy, as shown by the execution, prior to the September, 1900, term of the circuit court of New Madrid county.

The judgment in the Depoyster case recites that defendant was duly summoned and the record shows that Mr. Conran personally made the successful bid at the sheriff's sale under that judgment though the deed was executed to both him and Judge Stacey.

I.    There was no error in admitting evidence of the fact the execution issued on the Depoyster judgment was levied on sections 9-24-15 prior to the September term of the New Madrid Circuit Court. The only objection made to that evidence in the trial court which is now insisted upon is that parol evidence is not competent to prove the contents of an execution and indorsements thereon when the execution has been destroyed. The argument is that the statute (Secs. 10422 and 10423, R. S. 1909) provides a method of supplying lost executions and that this statutory method must be followed in all cases in which it is applicable to the exclusion of every other, and the contents of such lost instruments cannot be proved in the ordinary way.

**Lost Documents: Court Files: Proof.**

This contention was declared untenable in Parry v. Walser, 57 Mo. l. c. 172; Grayson v. Weddle, 63 Mo. l. c. 536, and Davis v. Montgomery, 205 Mo. l. c. 281, and the admissibility of parol evidence of the return on a lost execution recognized in Howell

**Proof of Lost Execution: Levy.** v. Sherwood, 242 Mo. l. c. 531. The cases cited as supporting a contrary conclusion are not in point. One (Becher v. Deuser, 169 Mo. l. c. 164, 165) discusses the sufficiency of the stenographer's notes as the basis of a *nunc pro tunc* entry and the necessity for proceeding under the statute to supply a lost memorandum before it can be used to support such an entry. Two (Campbell v. Greer, 197 Mo. 463, and State v. Wilson, 200 Mo. 23) deal with the necessity of supplying lost pleadings and orders before they are available for use in abstracts of record on appeal. The last (George v. Middough, 62 Mo. 549) treats of the necessity of notice in proceedings to supply lost records and the effect of a failure to object, at the first opportunity, on the ground of lack of notice.

II. The trial court might well have concluded from the evidence that the sheriff of New Madrid county levied upon section 9 prior to the beginning of the September, 1900, term of court. If

**Execution: Lien: Return.** the levy was so made, then the statute (Sec. 2228, R. S. 1909) to which reference was made in Butler v. Imhoff, supra, kept alive the lien of the execution until the time the sale was made, and this is true whatever effort the sheriff might have made to return the execution. [Huff v. Morton, 94 Mo. l. c. 409.] However, as

**First Day of Term.** held in Butler v. Imhoff, supra, and in this case on the former appeal, the law did not require the execution to be returned on the first day of the term and a levy after the term began and a sale during the term was effective to

254 Mo. 15

pass the title if the sale was otherwise regular unless it is true, as contended, that the entry in the execution docket, under the head "remarks," of the words "September, 26, 1900. Unsatisfied" shows such a return of the execution as to render it *functus officio*. There is no dispute that the sheriff had actually levied on section 5 prior to the convening of the court in New Madrid county in September, 1900, and had properly advertised it for sale. With this fact before them, it is hardly conceivable that the trial judge and sheriff, knowing that defendant had property in the county subject to sale and knowing that the levy on section 5 would be kept alive by the statute until the end of the next term thereafter, would undertake to do more than cause the execution docket to show that the judgment debt had not been paid. However that

**"Unsatisfied."** may be, the word "unsatisfied" when applied, without more, to an execution does not mean that there has been a return of the execution at all. It simply "conveys the idea that the writ has not been paid." [3 Freeman on Executions, sec. 356; Langford v. Few, 146 Mo. l. c. 152, 153; Merrick v. Carter, 205 Ill. l. c. 76; Martin v. Martin, 5 Jones' Law, l. c. 348.]

In any view, therefore, the execution was in force and sufficient to support a sale made, as in this case, at the return term. Consequently, the instructions asked were properly refused even if instructions could be said to have a place in a case like this.

III. So far as concerns the argument that Mr. Conran took title as trustee and that subsequent purchasers took title with notice by reason of the continued

**Trusts:**
**Evidence:**
**Buying at**
**Execution**
**Sale.**

possession of defendant, it will suffice to say that it depends in the first place upon the truth of defendant's testimony that in 1900 he wrote Mr. Conran from Michigan asking him to look after his (defendant's) interests. Defendant's conduct has not been

that of a man conscious of having been betrayed by his attorney. He began no proceedings at all to recover the land he now asserts Mr. Conran wrongfully bought at the sheriff's sale though his testimony shows he was financially able to do so. Not only did he fail to institute suit for the property but when sued, years after the transaction, he went to trial without any allegation in his answer which in the remotest way questioned Mr. Conran's right to buy at the sale. Mr. Conran was a witness on that trial and his testimony as then given is in this record. He was not attacked in any way and was not questioned concerning the letter now asserted to have been written him by defendant. After this court on the first appeal had practically decided that the defense made at the first trial was no defense at all, then apparently for the first time defendant bethought himself of the letter he now claims to have written. Before the second trial Mr. Conran died. It was stated in the argument that a copy of the present answer was served upon counsel for plaintiffs before his death but this court must act upon the record before it and upon the evidence before the trial court. This record does not show the matter stated nor did the trial court have an opportunity to weigh any such fact with the rest. Just when Mr. Conran died does not appear but it is clear he died before the amended answer was filed. Besides defendant was squarely contradicted by the only two persons in whose presence he claimed to have mentioned writing Mr. Conran, and, strangely enough, Mr. Moore, whom he claimed to have told of it in Mr. Rolwing's presence, also died before the second trial. The complaint made by defendant to Rolwing two or three years after Rolwing and Moore bought the land is explicable upon the theory that defendant thought that because Mr. Conran had represented him some years previously in some other matter he ought to have protected his property at the sheriff's sale.

The trial court was fully justified in finding that defendant wrote no letter to Mr. Conran. In fact this record would not support a finding of any other kind.

This disposes of the errors assigned. The judgment is affirmed. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All the judges concur.